**In re T.M.G.**

Court of Appeals of Tennessee, Eastern Section, at Knoxville.

Nov. 6, 2008 Session.

Nov. 25, 2008.

Permission to Appeal Denied by Supreme Court March 2, 2009.

Joseph K. Byrd, Cleveland, Tennessee, for the Appellant, P.M.

Ginger Wilson Buchanan, Cleveland, Tennessee, for the Appellee, A.G.

Robert E. Cooper, Jr., Attorney General and Reporter, and Douglas Earl Dimond, Senior Counsel, Nashville, Tennessee, for the Appellee, State of Tennessee.

## OPINION

D. MICHAEL SWINEY, J., delivered the opinion of the court, in which HERSCHEL P. FRANKS, P.J., and CHARLES D. SUSANO, JR., J., joined.

A.G. ("Petitioner") is the great-grandmother of T.M.G. ("the Child"), a nine year old girl. Petitioner obtained temporary custody of the Child in 2001. In 2006, Petitioner filed suit seeking to terminate the parental rights of the Child's biological father, P.M. ("Father"). Petitioner alleged that Father's parental rights should be terminated pursuant to Tenn.Code Ann. § 36–1–113(g)(6) because: (1) Father was confined by court order to a correctional facility for a period of ten or more years; and (2) the Child was under the age of eight at the time the sentence was imposed. Petitioner also alleged that termination of Father's parental rights was in the Child's best interest. Father opposed the petition, claiming Tenn.Code Ann. § 36–1–113(g)(6) was unconstitutional and that it was not in the Child's best interest to terminate his parental rights. Following a trial, the Trial Court found Tenn. Code Ann. § 36–1–113(g)(6) to be constitutional and thereafter terminated Father's parental rights. Father appeals claiming Tenn.Code Ann. § 36–1–113(g)(6) is unconstitutional, and that the Trial Court erred when it found that it had been proven by clear and convincing evidence that termination of Father's parental rights was in the Child's best interest. We affirm the judgment of the Trial Court on both issues.

### Background

Petitioner seeks to terminate Father's parental rights and to adopt the Child.[1] Petitioner alleged that Father's parental rights should be terminated pursuant to Tenn.Code Ann. § 36–1–113(g)(6) because Father had committed a criminal act and was confined by court order to a correctional facility for a period of ten or more years and the Child was under the age of eight at the time the sentence was imposed.[2] Petitioner also alleged that it was in the Child's best interests for Father's parental rights to be terminated. Counsel was appointed to represent Father, and a guardian ad litem was appointed on behalf of the Child. Father challenged the con-

---

1. The Child's biological mother joined in the petition for the sole purpose of surrendering her parental rights and consenting to the adoption of the Child by Petitioner. Although Petitioner is the Child's great-grandmother, she is often referred to in the pleadings as her grandmother.

2. Petitioner also alleged as grounds for terminating Father's parental rights that Father had abandoned the Child pursuant to Tenn. Code Ann. § 36–1–113(g)(1) & (2). The Trial Court eventually concluded that Father had not abandoned the Child and that determination is not at issue on this appeal.

stitutionality of Tenn.Code Ann. § 36–1–113(g)(6) and notified the Attorney General of the constitutional challenge.

The trial was on January 30, 2008, and Petitioner was the first witness. Petitioner testified that she is a retired widow. Petitioner has three adult children and was seventy-two years old at the time of trial. Petitioner described herself as in good health. Petitioner has supported the Child since she obtained temporary custody in 2001. Petitioner stated that Father occasionally sent some money directly to the Child. However, Father has not directly given Petitioner any money to assist with raising the Child.

The Child and the Child's biological mother moved in with Petitioner soon after the Child was born. Approximately three months before Petitioner obtained temporary custody, the mother moved out of Petitioner's home and left the Child with Petitioner. Petitioner obtained temporary custody of the Child on August 1, 2001. Petitioner has not opposed contact between the Child and Father or his family. On several occasions Petitioner has permitted the Child's paternal grandmother to take the Child to visit Father at the prison.

Petitioner arranged for the Child to see a therapist to help her deal with being away from both parents. The Child attends third grade and does well in school. The Child participates in various activities, including cheerleading, girl scouts, choir, and other church activities. Petitioner described her relationship with the Child as "very good." Father's family visits with the Child whenever they want to, and Petitioner will allow that to continue if she is permitted to adopt the Child. Petitioner stated that the Child will be "very upset" if Petitioner is not allowed to adopt her, and the Child cannot understand why Father opposes the adoption.

One reason Petitioner wants to adopt the Child is because Petitioner receives social security benefits, and the Child also will receive these benefits if Petitioner is allowed to adopt the Child. The Child also will receive assistance with a college education. Another reason Petitioner wants to adopt the Child is because the Child needs stability in her life.

Father testified at the hearing by telephone. At the time of trial, Father was 35 years old and was in prison at the Southeastern Tennessee Regional Correctional Facility in Pikeville, Tennessee. Father stated that he has been either in jail or prison since 1998. When questioned about his criminal past before his arrest in 1998, Father admitted he had been arrested for possession of crack cocaine for resale. When asked when that arrest occurred, Father stated "[t]he list is so long I don't remember. I mean, seriously the list is long." When asked how many times he had been incarcerated prior to 1998, Father responded "a lot." Father currently is serving a twenty year sentence. Father has been denied parole twice, and he is eligible for parole again in September of 2010.

Father found out that the Child's mother was pregnant while Father was evading arrest in New Orleans. Father knew the mother was pregnant for one week before he was caught and arrested. Father testified that he sent money to assist Petitioner with raising the Child, but it was not a lot given that Father makes approximately 34¢ an hour in prison. Father first saw the Child when she was three or four years old. Father has visited with the Child at the prison roughly ten times. Father also talks with the Child on the telephone. Father described his relationship with Petitioner as "pretty good." Father stated that he has a strong bond with the Child.

Father has no concerns about the home environment at Petitioner's home and whether it is an appropriate place for the Child. Father stated that as far as he is concerned, it would be fine for Petitioner to continue to be the Child's custodian so long as he does not lose his rights. Father added: "My thing is get out [of prison], let [Petitioner] keep [the Child] for as long as she's able to, and when she's no longer able to keep her then I want her back."

Following the trial, in March 2008 the Trial Court entered a thorough and detailed Order terminating Father's parental rights and further concluding that Tenn. Code Ann. § 36–1–113(g)(6) was constitutional. According to the Trial Court:

> The court [finds] that the father has not engaged in conduct that exhibited a wanton disregard for the welfare of the child before [the mother's] pregnancy, and there was no proof that he did anything to abandon this child after he knew of the pregnancy. [The father] was running from law enforcement while the parties were in New Orleans for two to three months. It was during this time [that the mother] became pregnant. [The father] found out [the mother] was pregnant one week before she left to go home as the result of a trip to the hospital after a physical altercation with [the father] just prior to the parties' separation. It was at the hospital that the mother discovered her pregnancy. [The father] has not been out of jail since that arrest. The parties did not know about the pregnancy prior to father's incarceration; therefore, the father could not abandon the child four months prior to his incarceration.

> [The father] first saw his child in 2003 or 2004. He had nine visits with the child prior to January, 2007. He has only visited the child one time since January 2007. He has given the child money from time to time, although an exact amount has not been established nor shown. He has been up for parole two times in the past and both were denied. He is in jail on convictions of possession of cocaine for resale, burglary and attempt to commit aggravated rape. He is currently serving a twenty year sentence.

> Petitioner has asked to terminate [the father's] rights pursuant to T.C.A. § 36–1–113(g)(6).

> [The father] in this matter is challenging the constitutionality of T.C.A. § 36–1–113(g)(6) on the basis that such creates an impermissible, irrebuttable presumption of the incarcerated parent's unfitness and as such focuses exclusively on pre-incarceration conduct that may not be relative to parental unfitness and fails to consider intangible parental qualities.

> The maternal grandmother wishes to adopt the child because the mother has not taken care of the child and moved in with another man sometime in 2001. The maternal grandmother received custody of the child ... on August 8, 2001. The testimony is uncontroverted that the maternal grandmother has taken excellent care of this child and even [the father] agrees that the child should remain in her custody. The maternal grandmother has had the child in therapy since the time she was three (3) years old through 2007. She has not only thrived but blossomed in the care of the maternal grandmother, being involved in church, choir, cheerleading, girl scouts, and making good grades in school. She from time to time is taken by her paternal grandmother to the prison to visit with the father. Maternal grandmother testified that the child can draw social security benefits because of maternal grandmother's status and that she can

have college assistance if she is able to adopt the child.

\* \* \*

This court finds that under T.C.A. § 36–1–113(g)(6), there is clear and convincing evidence that the father has been convicted of a crime and sentenced to more than ten (10) years in prison. There is further clear and convincing evidence that the child was under eight years old when the sentence was entered. Under this statute, grounds exist for termination of his parental rights. The court further finds clear and convincing evidence of a number of factors [listed in T.C.A. § 36–1–113(i) pertaining to the Child's best interest] in that 1) father has not established a home for the child; 2) he has no social services to effect an adjustment for himself or the child; 3) his visitation is not regular; 4) he has no place to stay; and 5) he has no ability to pay child support. The court heard testimony from the guardian ad litem that the child was having trouble at school answering questions about who her mother and father are. Based on all of the above and the excellent care that she has received from her maternal grandmother, it is in the child's best interest to be adopted by the maternal grandmother.

As to the constitutionality question ... [t]he question in this case under a strict scrutiny analysis is whether T.C.A. § 36–1–113 [ (g)(6) ] creates an irrebuttable presumption of a parent's unfitness by focusing only on pre-incarceration conduct [and is thus] violative of the [father's] due process rights.

In *In re Audrey S.*, 182 S.W.3d 838 (Tenn.Ct.App., 2005), ... [the] Court of Appeals opined that a "separate finding of parental [un]fitness or substantial harm, in addition to the finding of the existence of at least one of the statutory grounds, would be redundant."

In *In Re Audrey S*, at 882, the court concluded in effect:

"The constitutional unfit/substantial harm analysis is subsumed within the analysis of whether the statutory grounds for termination have been properly established."

\* \* \*

As noted by the Tennessee Supreme Court in *State Department of Human Services v. Smith*, 785 S.W.2d 336 (Tenn. 1990), a child's need for a permanent, stable and safe environment competes with the parents' interest in the parent-child relationship. The result of this competing interest is that the decision has to be made in favor of the child's need for [a] permanent, stable and safe environment....

It is the father's position in this case that [the statute] creates an irrebuttable presumption that violates his constitutional rights. It is the opinion of the court that the father's position regarding this statute is misplaced. The Court has the ability in the second prong of the test to decide whether the child's best interest would be served by terminating parental rights....

The biological father's argument that T.C.A. § 36–1–113(g)(6) fails to consider the intangible parental qualities because it focuses exclusively on pre-incarceration conduct is misplaced. The [father's] intangible parental qualities are considered in the second prong of the test where the court could also find that the termination of parental rights would not be in the child's best interest. There is no doubt in this case that [the father] has concern for and love for his child. However, he is unable due to his incarceration to provide a permanent,

stable home for his child and to financially support the needs of the minor child in a meaningful manner. He has visited the child in the prison only a few times in the child's entire life. Therefore, the court finds that T.C.A. § 36–1–113(g)(6) has not violated [the father's] due process right afforded him under the state and federal constitutions. The statute serves a compelling state interest and is narrowly tailored to serve that interest and further satisfies the strict scrutiny test to be constitutional. . . .

Father appeals raising two issues. First, Father claims Tenn.Code Ann. § 36–1–113(g)(6) is unconstitutional and violates his due process rights. More specifically, Father claims the statute creates an irrebuttable presumption that effectively terminates a trial court's inquiry into the parental fitness of an incarcerated parent. Second, Father argues that the Trial Court erred when it found that there was clear and convincing evidence that termination of his parental rights was in the Child's best interest.

### Discussion

The standard of review for Father's constitutional challenge to Tenn.Code Ann. § 36–1–113(g)(6) is set forth in *Lynch v. City of Jellico,* 205 S.W.3d 384 (Tenn. 2006). According to *Lynch:*

This appeal involves questions of law only. Therefore, the standard of review is de novo without any presumption of correctness given to the legal conclusions of the trial court. *Taylor v. Fezell,* 158 S.W.3d 352, 357 (Tenn.2005). Further, it is well-established in Tennessee that when considering the constitutionality of a statute, we start with a strong presumption that acts passed by the legislature are constitutional. *See Osborn v. Marr,* 127 S.W.3d 737, 740–41 (Tenn.

2004). Indeed, "we must indulge every presumption and resolve every doubt in favor of constitutionality." *Vogel v. Wells Fargo Guard Servs.,* 937 S.W.2d 856, 858 (Tenn.1996). Therefore, notwithstanding the trial judge's findings in the present case, we must begin our inquiry with the presumption that the statutes in question pass constitutional muster.

Likewise, it is well recognized that a facial challenge to a statute, such as that involved here, is "the most difficult challenge to mount successfully since the challenger must establish that no set of circumstances exist under which the Act would be valid." *Davis–Kidd Booksellers, Inc. v. McWherter,* 866 S.W.2d 520, 525 (Tenn.1993) (quoting *United States v. Salerno,* 481 U.S. 739, 745, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987)). Thus, the plaintiffs in this appeal have a heavy legal burden in challenging the constitutionality of the statutes in question.

*Lynch,* 205 S.W.3d at 390.

In *In re The Adoption of J.K.W.,* No. E2006–00906–COA–R3–PT, 2007 WL 161048 (Tenn.Ct.App. Jan.23, 2007), *perm. app. denied April 30, 2007,* this Court addressed an essentially identical constitutional challenge to the validity of Tenn. Code Ann. § 36–1–113(g)(6). In *J.K.W.,* as in the present case, the father was incarcerated for ten or more years and the child was under the age of eight at the time the sentence was imposed. *Id.* at * 1. The father in *J.K.W.* likewise claimed Tenn.Code Ann. § 36–1–113(g)(6) violated his due process rights. *Id.* at *2.

This Court in *J.K.W.* examined the case law that had developed discussing the constitutionality of Tenn.Code Ann. § 36–1–113(g)(6). In particular, we discussed a dis-

sent by Judge Koch[3] in *In re Adoption of a Female Child, E.N.R.*, No. 01A01–9806–CH–00316, 1999 WL 767795 (Tenn.Ct.App. 1999) wherein Judge Koch concluded that Tenn.Code Ann. § 36–1–113(g)(6) was facially unconstitutional because the statute did not require a separate finding that continuation of the parent-child relationship would threaten the child's welfare. We further explained that Judge Koch later repudiated his dissent in *E.N.R.* when he authored the majority opinion in *In re Audrey S.*, 182 S.W.3d 838 (Tenn.Ct.App. 2005), *app. dismissed Nov. 7, 2005*. We then examined *In re Audrey S.* in further detail:

In *In re Audrey S.*, the mother argued that T.C.A. § 36–1–113(g)(6) was unconstitutional because it did not require a separate finding that she was an unfit parent or that continuation of the parent/child relationship would pose a risk of substantial harm to the welfare of the child. Judge Koch's majority opinion concluded that the statute was constitutional, stating as follows:

In every case in which parental rights are terminated, there must be a "finding by the court by clear and convincing evidence that the grounds for termination o[f] parental or guardianship rights have been established," Tenn. Code Ann. § 36–1–113(c)(1), and this finding must be contained in a written order entered by the trial court, Tenn.Code Ann. § 36–1–113(k). Thus, as long as the juvenile court has correctly found that at least one of the statutory grounds for termination of parental rights exists, the constitutional requirement of a showing of parental unfitness or a risk of substantial harm to the welfare of a child

has been satisfied. In effect, the constitutional unfit parent/substantial harm analysis is subsumed within the analysis of whether the statutory grounds for termination have been properly established. A separate finding of parental unfitness or substantial harm, in addition to a finding of the existence of at least one of the statutory grounds, would be redundant.

*J.K.W.*, 2007 WL 161048, at *9 (quoting *In re Audrey S.*, 182 S.W.3d at 882).

We then observed in *J.K.W.* that *In re Audrey S.*, was precedential authority that Tenn.Code Ann. § 36–1–113(g)(6) was indeed constitutional. We stated:

Thus, with *In re Audrey S.*, there is precedential authority to the effect that T.C.A. § 36–1–113(g)(6) is not unconstitutional because of its failure to expressly require a separate showing of substantial harm to the child. It is now clear that Judge Koch's dissent in *E.N.R.*, and Father's argument in the instant case based upon that dissent, have been repudiated by *In re Audrey S.* This latter case is a complete answer to the constitutional challenge mounted by Father.

In light of the decision by the Middle Section of this Court in *In re Audrey S.*, [*In re Marr*,] 194 S.W.3d 490 (Tenn.Ct. App.2005) and the decision by the Eastern Section in *Worley v. Dep't of Children's Servs.*, No. 03A01–9708–JV–00366, 1998 WL 52098 (Tenn. Ct.App. E.S., filed December 10, 1998), *no appl. perm. appeal filed*, we now have intermediate appellate court decisions holding that T.C.A. § 36–1–113(g)(6) is facially constitutional. Unless and until the Supreme Court instructs otherwise,

---

3. In June 2007, Judge Koch, now Justice Koch, was appointed to the Tennessee Su-

preme Court.

we will follow these decisions. Therefore, we hold that T.C.A. § 36–1–113(g)(6) is not constitutionally deficient because of its failure to expressly require a separate finding that continuation of the parent-child relationship threatens the welfare of the child. We conclude that T.C.A. § 36–1–113(g)(6) is narrowly tailored to serve a compelling state interest.

*J.K.W.*, 2007 WL 161048, at *11 (footnote omitted).

▮▮▮ Father's first issue is: "Tenn Code Ann. § 36–1–113(g)(6) violates [Father's] due process rights because it creates an irrebuttable presumption and prohibits the Trial Court from inquiring as to [Father's] parental fitness."[4] Although Father claims this issue is different from the issue raised in *J.K.W.*, we find very little practical difference between this case and *J.K.W.* As explained by this Court in *In Re Audrey S.* and reaffirmed by this Court in *J.K.W.*, if a trial court:

> has correctly found that at least one of the statutory grounds for termination of parental rights exists, the constitutional requirement of a showing of parental unfitness or a risk of substantial harm to the welfare of a child has been satisfied. In effect, the constitutional unfit parent/substantial harm analysis is subsumed within the analysis of whether the statutory grounds for termination have been properly established. A separate finding of parental unfitness or sub-

stantial harm, in addition to a finding of the existence of at least one of the statutory grounds, would be redundant.

*J.K.W.*, 2007 WL 161048, at *9 (quoting *In re Audrey S.*, 182 S.W.3d at 882). As we stated in *J.K.W.*, this is a "complete answer to the constitutional challenge mounted by Father." *J.K.W.*, 2007 WL 161048, at * 11.

This Court reached a similar result in *Worley v. Dep't of Children's Servs.*, No. 03A01–9708–JV–00366, 1998 WL 52098 (Tenn.Ct.App. Feb.10, 1998), *no appl. perm. appeal filed*, which also involved a constitutional challenge to Tenn.Code Ann. § 36–1–113(g)(6). We stated:

> The statute under attack bears a real and substantial relation to furthering the best interests of children, and such statutes permissibly afford greater protection to the minor's interest than to the rights of a parent. *See In re: E. G.*, 107 Misc.2d 900, 436 N.Y.S.2d 546 (1980). The legislature has expressed as a compelling state interest that minor children not remain permanently in foster care. T.C.A. § 36–1–113.

> The appellant, by his own acts, has severely diminished, if not nullified, his ability to discharge his role as a proper parent. When the parenting role is not or cannot be fulfilled, under the doctrine of *parens patriae* the State has a "special duty" to fulfill that role. *See [Hawk*

---

4. Father does not challenge the fact that grounds to terminate his parental rights had been established by clear and convincing evidence. In *In re E.M.P.*, No. E2006–00446–COA–R3–PT, 2006 WL 2191250, at *6 (Tenn. Ct.App. Aug.3, 2006), we noted that establishing grounds pursuant to Tenn.Code Ann. § 36–1–113(g)(6) was not a very difficult task because:

> there are only two necessary findings relative to this statutory ground. Specifically, that the parent "has been confined in a correctional or detention facility of any type, by order of the court as a result of a criminal act, under a sentence of ten (10) or more years," and that the child was "under eight (8) years of age at the time the sentence [was] entered by the court." Tenn. Code Ann. § 36–1–113(g)(6). Here, at the time of the hearing, Mother either was or was not serving a ten year prison sentence.... Likewise, the child either was or was not under eight years old when Mother's criminal sentence was imposed.

*v. Hawk]*, 855 S.W.2d 573 at 580 (Tenn. 1993). The proper parental role in the life of a child under eight years is crucial to the child's welfare, and there is a compelling need for the State to protect the best interests of the child in this regard. The statute under consideration properly addresses and furthers that interest. For a parent who is unable or unwilling to care for the child's best interest, a statute that enables the State to terminate parental rights on these grounds does not violate the [due] process clause of the Constitutions. *See In re: J. B.*, 92 A.D.2d 917, 460 N.Y.S.2d 133 (1983).

*Worley*, 1998 WL 52098, at *1.

 Contrary to Father's assertion, a finding that at least one ground exists to terminate a parent's rights does not mean that certain intangible qualities of that parent, such as their love for the child, cannot be considered in the overall analysis. As this Court observed in *In re Marr*, No. M2001–02890–COA–R3–CV, 2003 WL 152640, at * 13 (Tenn.Ct.App. Jan.23, 2003), *vacated and dismissed on other grounds sub nom. Osborn v. Marr*, 127 S.W.3d 737 (Tenn.2004):

Despite the harm that results to a child from the parent being unavailable to care for him, in a given instance, that harm may be outweighed by the benefit to the child of continuing the parental relationship. Thus, the statute provides that, even if grounds are established, the trial court may determine that termination of the parental relationship is not in the child's "best interests." Tenn. Code Ann. § 36–1–113(c)(2); *see e.g., In Re: D.I.S.*, No. W2000–00061–COA–R3–CV, Tenn.App. LEXIS 358, [2001 WL 523956] (Tenn.Ct.App. May 17, 2001).... [5]

In light of the several decisions discussed above by different sections of this Court holding that Tenn.Code Ann. § 36–1–113(g)(6) is constitutional, we reject Father's claim to the contrary. Accordingly, we affirm the judgment of the Trial Court on this issue.

 Father's second issue is his claim that clear and convincing evidence was not presented to the Trial Court that termination of his parental rights was in the Child's best interest. The standard of review for this issue was set forth by the Supreme Court in *In re F.R.R., III*, 193 S.W.3d 528 (Tenn.2006):

This Court must review findings of fact made by the trial court *de novo* upon the record "accompanied by a presumption of the correctness of the find-

---

**5.** On appeal to the Tennessee Supreme Court, the *Marr* case was dismissed after the Supreme Court determined that the mother lacked standing to bring the lawsuit. *See Osborn v. Marr*, 127 S.W.3d 737, 741 (Tenn. 2004). While this may significantly detract from the precedential value of the decision by this Court, we, nevertheless, agree with the analysis quoted above which was not specifically addressed in the Supreme Court's opinion. While we are reluctant to "guess" what the Supreme Court would do if they granted and decided an appeal on the constitutionality of Tenn.Code Ann. § 36–1–113(g)(6), we note that Justice Koch wrote the majority opinion in *In re Audrey S., supra*, when he was a judge on the Court of Appeals. In addition, now

Justice Lee was a judge on the Court of Appeals when she concurred in the *J.K.W.* opinion. It is also worth noting that the Supreme Court expressly granted the appeal in *Osborn v. Marr* to address the constitutionality of Tenn.Code Ann. § 36–1–113(g)(6), but never reached that issue because the Court ultimately concluded that the mother lacked standing. When the Supreme Court again was confronted with the opportunity to address the constitutionality of Tenn.Code Ann. § 36–1–113(g)(6) when a Tenn. R.App. P. 11 request for permission to appeal was filed in *J.K.W.*, the Supreme Court declined review of this Court's opinion upholding the constitutionality of Tenn.Code Ann. § 36–1–113(g)(6).

ing, unless the preponderance of the evidence is otherwise." Tenn. R.App. P. 13(d). To terminate parental rights, a trial court must determine by clear and convincing evidence not only the existence of at least one of the statutory grounds for termination but also that termination is in the child's best interest. *In re Valentine,* 79 S.W.3d 539, 546 (Tenn.2002) (citing Tenn.Code Ann. § 36–1–113(c)). Upon reviewing a termination of parental rights, this Court's duty, then, is to determine whether the trial court's findings, made under a clear and convincing standard, are supported by a preponderance of the evidence.

*Id.* at 530.

In determining whether termination of parental rights is in a child's best interest, a court is to consider the factors set forth in Tenn.Code Ann. § 36–1–113(i). This statute provides:

(i) In determining whether termination of parental or guardianship rights is in the best interest of the child pursuant to this part, the court shall consider, but is not limited to, the following:

(1) Whether the parent or guardian has made such an adjustment of circumstance, conduct, or conditions as to make it safe and in the child's best interest to be in the home of the parent or guardian;

(2) Whether the parent or guardian has failed to effect a lasting adjustment after reasonable efforts by available social services agencies for such duration of time that lasting adjustment does not reasonably appear possible;

(3) Whether the parent or guardian has maintained regular visitation or other contact with the child;

(4) Whether a meaningful relationship has otherwise been established between the parent or guardian and the child;

(5) The effect a change of caretakers and physical environment is likely to have on the child's emotional, psychological and medical condition;

(6) Whether the parent or guardian, or other person residing with the parent or guardian, has shown brutality, physical, sexual, emotional or psychological abuse, or neglect toward the child, or another child or adult in the family or household;

(7) Whether the physical environment of the parent's or guardian's home is healthy and safe, whether there is criminal activity in the home, or whether there is such use of alcohol or controlled substances as may render the parent or guardian consistently unable to care for the child in a safe and stable manner;

(8) Whether the parent's or guardian's mental and/or emotional status would be detrimental to the child or prevent the parent or guardian from effectively providing safe and stable care and supervision for the child; or

(9) Whether the parent or guardian has paid child support consistent with the child support guidelines promulgated by the department pursuant to § 36–5–101.

Tenn.Code Ann. § 36–1–113(i) (Supp.2008).

In the present case, it is unknown when Father will be released from prison and then how long after his release before he would be able to care for the Child, assuming he ever gets to that point. Although Father has maintained some contact with the Child, we are unable to describe 10 visits over the course of several years as "regular." The Child is doing exceedingly well in the care of Petitioner and a change of caretakers could indeed have a negative impact on the Child's life. The proof at trial was that Petitioner's home is a healthy and safe home for the Child, and Petitioner has taken a very active role in

the Child's life. When all of the applicable factors are considered, we conclude that the Trial Court did not err when it found that Petitioner had proven by clear and convincing evidence that termination of Father's parental rights was in the Child's best interest.

## Conclusion

The judgment of the Trial Court is affirmed, and this cause is remanded to the Trial Court for collection of the costs below. Costs on appeal are taxed to the Appellant, P.M., and his surety, if any, for which execution may issue, if necessary.