IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs August 1, 2022

## IN RE KAMYIAH H.

**Appeal from the Circuit Court for Montgomery County**
**No. CC-20-CV-902      Kathryn Wall Olita, Judge**



**No. M2021-00834-COA-R3-PT**

A mother appeals the trial court's decision to terminate her parental rights based on the grounds of (1) abandonment by wanton disregard, (2) persistence of conditions, (3) sentenced to two or more years' imprisonment for conduct against a child, (4) incarcerated under a sentence of ten or more years, and (5) failure to manifest an ability and willingness to assume custody and financial responsibility. She further challenges the trial court's finding by clear and convincing evidence that termination of her parental rights was in the best interest of the child. Finding that the trial court failed to make sufficient findings of fact for the failure to manifest an ability and willingness ground, we vacate that termination ground. We affirm the trial court's decision in all other respects.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed in Part and Vacated in Part**

ANDY D. BENNETT, J., delivered the opinion of the Court, in which JOHN W. MCCLARTY and KENNY W. ARMSTRONG, JJ., joined.

Taylor Robinson Dahl, Clarksville, Tennessee, for the appellant, Brittany H.

Susan Rebecca Mader, Nashville, Tennessee, for the appellees, Lucinda L. and David L.

## OPINION

### FACTUAL AND PROCEDURAL BACKGROUND

This case involves the termination of Brittany H.'s ("Mother") parental rights to her daughter, Kamyiah H. (born in 2017). Mother was arrested and indicted on nine counts of Class A Felony Aggravated Child Abuse, Class A Felony Aggravated Child Endangerment, and Class A Felony Aggravated Child Neglect. These charges arose from activities Mother engaged in between December 13, 2016 and March 13, 2017, that

resulted in three of her other children testing positive for methamphetamines.[1] Ultimately, Mother pleaded guilty to two counts of attempted aggravated child neglect[2] and received a sentence of eight years of community corrections.

Mother violated the terms of her community corrections sentence and was arrested on August 3, 2017.[3] The criminal court ordered her to serve six days in jail for this violation. The Tennessee Department of Children's Services ("DCS" or "the Department") became involved at this time and removed Kamyiah from Mother's custody. Upon removal, a drug test was performed on the child, and the test returned positive for THC and methamphetamines. The Department then filed a petition for dependency and neglect in the juvenile court of Obion County on August 7, 2017. The juvenile court entered an order on January 30, 2018, granting temporary legal custody of the child to DCS based on Mother's stipulation "that at the time of the removal, there was clear and convincing evidence that the minor child was dependent and neglected." Shortly before the juvenile court entered its order, Mother failed a drug screen resulting in another violation of the terms of her community corrections sentence. For this violation, she received a sentence of ninety days in jail and was ordered to participate in drug court.

Following the removal from Mother's custody, DCS initially placed the child with her paternal grandmother. The paternal grandmother became unable to care for the child, and on July 2, 2018, DCS placed the child with David L. and Lucinda L. ("Petitioners"). The child has remained in their custody since that time.

On November 5, 2018, Mother violated the terms of her community corrections sentence for a third time when she stayed out past curfew while wearing an ankle monitor. The criminal court revoked her community corrections sentence and ordered her to serve ten years in prison—to be served at thirty percent with eligibility for parole in October 2021.[4] On May 11, 2020, approximately a year and a half into Mother's prison sentence, Petitioners filed a petition to terminate her parental rights. The child's father, Eric W., joined in the petition to consent to termination of his parental rights. After a one-day trial on July 7, 2021, the trial court entered an order terminating Mother's parental rights. The court determined that the following grounds for termination had been proven by clear and convincing evidence: (1) abandonment by wanton disregard, (2) persistence of conditions,

---

[1] Mother's parental rights to those three children are not at issue in this appeal. Although Mother was pregnant with Kamyiah at the time she committed these acts, Kamyiah was born without drugs in her system.

[2] Both are Class B felonies and are lesser included offenses to the original charges against Mother.

[3] It is unclear from the record what Mother's exact violation was, but her testimony at the termination hearing indicated it was drug-related.

[4] According to Mother's appellate brief, she was, in fact, released from prison in October 2021.

(3) sentenced to two or more years' imprisonment due to conduct against a child, (4) incarcerated under a sentence of ten or more years while the child is under the age of eight, and (5) failure to demonstrate an ability and willingness to assume custody or financial responsibility. The court further determined that there was clear and convincing evidence that termination of Mother's parental rights was in the best interest of the child.

Mother appealed and presents the following issues for our review: whether the trial court erred in finding by clear and convincing evidence that grounds existed to terminate her parental rights and whether the court erred in determining that termination of her parental rights was in the best interest of the child.

STANDARD OF REVIEW

Under both the federal and state constitutions, a parent has a fundamental right to the care, custody, and control of his or her own child. *Stanley v. Illinois*, 405 U.S. 645, 651 (1972); *In re Angela E.*, 303 S.W.3d 240, 249-50 (Tenn. 2010) (citing *Troxel v. Granville*, 530 U.S. 57, 65 (2000)); *Nash-Putnam v. McCloud*, 921 S.W.2d 170, 174-75 (Tenn. 1996) (citing *Nale v. Robertson*, 871 S.W.2d 674, 678 (Tenn. 1994)). Although this right is fundamental, it is not absolute and may be terminated in certain situations. *In re Angela E.*, 303 S.W.3d at 250. Our legislature has identified "'those situations in which the state's interest in the welfare of a child justifies interference with a parent's constitutional rights by setting forth grounds on which termination proceedings can be brought.'" *In re Jacobe M.J.*, 434 S.W.3d 565, 568 (Tenn. Ct. App. 2013) (quoting *In re W.B., IV.*, Nos. M2004-00999-COA-R3-PT, M2004-01572-COA-R3-PT, 2005 WL 1021618, at *7 (Tenn. Ct. App. Apr. 29, 2005)).

Tennessee Code Annotated section 36-1-113 provides the grounds and procedures for terminating parental rights. First, a petitioner seeking to terminate parental rights must prove that at least one ground for termination exists. Tenn. Code Ann. § 36-1-113(c)(1); *In re Angela E.*, 303 S.W.3d at 251. Second, a petitioner must prove that terminating parental rights is in the child's best interest. Tenn. Code Ann. § 36-1-113(c)(2); *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002).

The termination of a parent's rights is one of the most serious decisions courts make because "[t]erminating parental rights has the legal effect of reducing the parent to the role of a complete stranger," *In re W.B., IV*, 2005 WL 1021618, at *6, "and of 'severing forever all legal rights and obligations of the parent or guardian.'" *Id.* (quoting Tenn. Code Ann. § 36-1-113(l)(1)). Consequently, a parent has a constitutional right to "fundamentally fair procedures" during termination proceedings. *In re Hannah C.*, No. M2016-02052-COA-R3-PT, 2018 WL 558522, at *2 (Tenn. Ct. App. Jan. 24, 2018); *see also In re Carrington H.*, 483 S.W.3d 507, 522 (Tenn. 2016).

Tennessee law ensures fundamental fairness in termination proceedings by requiring a heightened standard of proof—clear and convincing evidence. *See* Tenn. Code Ann. § 36-1-113(c)(1); *In re Carrington H.*, 483 S.W.3d at 522. Before a parent's rights may be terminated, a petitioner must prove both the grounds and the child's best interest by clear and convincing evidence. Tenn. Code Ann. § 36-1-113(c); *In re Valentine*, 79 S.W.3d at 546. "Clear and convincing evidence 'establishes that the truth of the facts asserted is highly probable, and eliminates any serious or substantial doubt about the correctness of the conclusions drawn from the evidence.'" *In re Serenity B.*, No. M2013-02685-COA-R3-PT, 2014 WL 2168553, at *2 (Tenn. Ct. App. May 21, 2014) (quoting *In re M.J.B.*, 140 S.W.3d 643, 653 (Tenn. Ct. App. 2004)).

We review the trial court's findings of fact de novo with a presumption of correctness unless the evidence preponderates otherwise. TENN. R. APP. P. 13(d); *In re Serenity B.*, 2014 WL 2168553, at *2. In light of the heightened standard of proof, we must then make our own determination "as to whether the facts, either as found by the trial court or as supported by a preponderance of the evidence, amount to clear and convincing evidence of the elements necessary to terminate parental rights." *In re Carrington H.*, 483 S.W.3d at 524 (citing *In re Bernard T.*, 319 S.W.3d 586, 596-97 (Tenn. 2010)).

ANALYSIS

I. Grounds for termination

A. Abandonment by wanton disregard

A parent's rights may be terminated for abandoning his or her child. Tenn. Code Ann. § 36-1-113(g)(1). Tennessee Code Annotated section 36-1-102(1)(A) defines "abandonment" in multiple ways, but only the definition provided in subsection (iv)(c) applies to this case. At the time the petition was filed, subsection (iv)(c) defined abandonment as follows:

> A parent or guardian is incarcerated at the time of the filing of a proceeding, pleading, petition, or amended petition to terminate the parental rights of the parent or guardian of the child who is the subject of the petition for termination of parental rights or adoption, or a parent or guardian has been incarcerated during all or part of the four (4) consecutive months immediately preceding the filing of the action and has:
> . . . .
> (*c*) Has engaged in conduct prior to incarceration that exhibits a wanton disregard for the welfare of the child[.]

- 4 -

Tenn. Code Ann. § 36-1-102(1)(A)(iv)(c).[5]

Although parental incarceration is required for this termination ground to apply, incarceration itself does not establish that the parent abandoned the child by displaying a wanton disregard for the child's welfare. *In re Audrey S.*, 182 S.W.3d 838, 866 (Tenn. Ct. App. 2005); *see also In re Ellie G.*, No. M2021-00982-COA-R3-PT, 2022 WL 2517262, at *4 (Tenn. Ct. App. July 7, 2022). Rather, "the parent's incarceration serves only as a triggering mechanism that allows the court to take a closer look at the child's situation to determine whether the parental behavior that resulted in incarceration is part of a broader pattern of conduct that renders the parent unfit or poses a risk of substantial harm to the welfare of the child." *In re Audrey S.*, 182 S.W.3d at 866. A court, therefore, must determine whether clear and convincing evidence shows "'that the parent's pre-incarceration conduct displayed a wanton disregard for the welfare of the child.'" *In re Ellie G.*, 2022 WL 2517262, at *4 (quoting *In re Audrey S.*, 182 S.W.3d at 866). The statute does not define the specific conduct that demonstrates a wanton disregard, but "actions that our courts have commonly found to constitute wanton disregard reflect a 'me first' attitude involving the intentional performance of illegal or unreasonable acts and indifference to the consequences of the actions for the child." *In re Anthony R.*, No. M2014-01753-COA-R3-PT, 2015 WL 3611244, at *3 (Tenn. Ct. App. June 9, 2015). This Court has repeatedly held that "probation violations, repeated incarceration, criminal behavior, substance abuse, and the failure to provide adequate support or supervision for a child can, alone or in combination," constitute conduct demonstrating a wanton disregard for a child's welfare. *In re Audrey S.*, 182 S.W.3d at 867-68.

Here, prior to Mother's incarceration in 2018, she received a sentence of eight years of community corrections because she pleaded guilty to two counts of attempted child neglect related to her exposure of her other children to drugs. Although Kamyiah was not born drug-exposed, she tested positive for THC and methamphetamines within a few months of her birth. After the child entered DCS custody, Mother repeatedly violated her community corrections sentence which resulted in revocation of that sentence and in Mother receiving an even lengthier prison sentence. In other words, Mother had an opportunity to remain active in the child's life, but her decision to repeatedly violate community corrections negated that opportunity. Mother certainly acted with "indifference to the consequences of [her] actions for the child." *In re Anthony R.*, 2015 WL 3611244, at *3. We conclude that clear and convincing evidence shows that Mother's pre-incarceration conduct demonstrated a wanton disregard for the child's welfare.

---

[5] Effective July 1, 2022, the Tennessee General Assembly amended Tenn. Code Ann. § 36-1-102(1)(A)(iv)(c) to provide as follows: "With knowledge of the existence of the born or unborn child, engaged in conduct prior to, during, or after incarceration that exhibits a wanton disregard for the welfare of the child[.]" We apply the version of the statute that was in effect when the termination petition was filed on May 11, 2020. *See In re Braxton M.*, 531 S.W.3d 708, 732 (Tenn. Ct. App. 2017) (holding the version of a termination statute "'that was in force when the petition was filed governs this case'") (quoting *In re Tianna B.*, No. E2015-02189-COA-R3-PT, 2016 WL 3729386, at *7 (Tenn. Ct. App. July 6, 2016)).

Therefore, we affirm the trial court's termination of Mother's parental rights pursuant to this ground.

### B. Persistence of conditions

The trial court also terminated Mother's parental rights pursuant to Tenn. Code Ann. § 36-1-113(g)(3). This ground is often referred to as "persistence of conditions" and "focuse[s] on the results of the parent's efforts at improvement rather than the mere fact that he or she had made them." *In re Audrey S.*, 182 S.W.3d at 871, 874. Therefore, the question we must answer is "the likelihood that the child can be safely returned to the custody of the [parent], not whether the child can safely remain in foster care." *In re K.A.H.*, No. M1999-02079-COA-R3-CV, 2000 WL 1006959, at *5 (Tenn. Ct. App. July 21, 2000).

Persistence of conditions may be a basis for terminating a parent's parental rights if:

The child has been removed from the home or the physical or legal custody of a parent . . . for a period of six (6) months by a court order entered at any stage of proceedings in which a petition has been filed in the juvenile court alleging that a child is a dependent and neglected child, and:

(i) The conditions that led to the child's removal still persist, preventing the child's safe return to the care of the parent . . . , or other conditions exist that, in all reasonable probability, would cause the child to be subjected to further abuse or neglect, preventing the child's safe return to the care of the parent . . . ;

(ii) There is little likelihood that these conditions will be remedied at an early date so that the child can be safely returned to the parent . . . in the near future; and

(iii) The continuation of the parent . . . and child relationship greatly diminishes the child's chances of early integration into a safe, stable, and permanent home[.]

Tenn. Code Ann. § 36-1-113(g)(3)(A). A petitioner seeking to terminate parental rights pursuant to this ground must prove each of the statutory elements by clear and convincing evidence. *In re Justin D.*, No. E2019-00589-COA-R3-PT, 2020 WL 4473032, at *9 (Tenn. Ct. App. Aug. 4, 2020) (citing *In re Michael B.*, No. M2019-01486-COA-R3-PT, 2020 WL 2988932, at *10 (Tenn. Ct. App. June 4, 2020)).

We have held that "'[a] parent's continued inability to provide fundamental care to a child, even if not willful, . . . constitutes a condition which prevents the safe return of the child to the parent's care.'" *In re Navada N.*, 498 S.W.3d 579, 605 (Tenn. Ct. App. 2016) (quoting *In re A.R.*, No. W2008-00558-COA-R3-PT, 2008 WL 4613576, at *20 (Tenn. Ct. App. Oct. 13, 2008)). This case is an example of such a situation. There is no dispute that the child was removed from Mother's custody by court order and then adjudicated dependent and neglected more than six months before the termination hearing began. *See* Tenn. Code Ann. § 36-1-113(g)(3)(A)-(B). There is also no dispute that the child was removed from Mother's custody due to drug exposure. The record shows that, after the child entered DCS custody, Mother's drug use continued because she committed a series of community corrections violations which included drug use, as evinced by a failed drug screen in January 2018 and the criminal court ordering Mother to participate in drug court. Although Mother testified that she had been sober since her incarceration began in November 2018, her sobriety was unquestionably aided by the fact she was incarcerated and, at trial, she remained incarcerated. Thus, the record shows that Mother could remain sober if incarcerated, but nothing in the record indicates that Mother can remain sober once released from prison. Furthermore, Mother testified that, if she was released on parole in October 2021, she would not be able to provide a home for the child for a period of six to nine months because she planned to live in a half-way house. The foregoing facts inspire little confidence that the conditions leading to the child's removal will be remedied so that the child can be safely returned to Mother in the near future.[6]

Lastly, the continuation of the parent and child relationship in this case would diminish the child's chances of integrating into a permanent home. *See* Tenn. Code Ann. § 36-1-113(g)(3)(A)(iii). Mr. L. testified that the child had lived with him and his wife since the child was approximately nine months old and that the child was happy and doing well in their home. The child had bonded with Petitioners, and Petitioners wanted to adopt her if Mother's parental rights were terminated. In light of the foregoing, we affirm the trial court's determination that Petitioners proved the existence of this termination ground by clear and convincing evidence.

C. Sentence of two years or more for conduct against a child

The trial court next terminated Mother's parental rights pursuant to Tenn. Code Ann. § 36-1-113(g)(5). Effective March 6, 2020, the Tennessee General Assembly

---

[6] In her appellate brief, Mother attempts to show that the conditions leading to removal had been remedied by pointing to an order entered by the juvenile court on March 14, 2018, that states she was in substantial compliance with the requirements of the permanency plan. The record contains no permanency plans, so we have no way of deducing what the requirements were. Moreover, a subsequent order entered by the juvenile court on June 13, 2018, contradicts Mother's argument because it states that Mother was, at that time, not in substantial compliance with the requirements of the permanency plans. Mother's argument on this issue is unavailing.

amended Tenn. Code Ann. § 36-1-113(g)(5) to provide that a parent's parental rights could be terminated if:

> The parent or guardian has been sentenced to more than two (2) years' imprisonment for conduct against a child that has been found under any prior order of a court or that is found by the court hearing the petition to be severe child abuse, as defined in § 37-1-102. Unless otherwise stated, for purposes of this subdivision (g)(5), "sentenced" shall not be construed to mean that the parent or guardian must have actually served more than two (2) years in confinement, but shall only be construed to mean that the court had imposed a sentence of two (2) or more years upon the parent or guardian[.]

Because Petitioners filed the termination petition after March 6, 2020, the amendment applies to this case. A review of the termination order shows that the trial court relied on the previous, more restrictive version of the statute which applied only if the parent's conduct was "against the child who is the subject of the petition, or for conduct against any sibling or half-sibling of the child or any other child residing temporarily or permanently in the home of such parent" rather than conduct against any child. Tenn. Code Ann. § 36-1-113(g)(5) (2020). We consider this harmless error, however, because the result in this case is the same under either version of the statute. *See* TENN. R. APP. P. 36(b) ("A final judgment from which relief is available and otherwise appropriate shall not be set aside unless, considering the whole record, error involving a substantial right more probably than not affected the judgment or would result in prejudice to the judicial process.").

The record shows that Mother pleaded guilty to two counts of attempted aggravated child neglect pursuant to Tenn. Code Ann. § 39-15-402(a)(1)[7] and was sentenced to eight years of community corrections because she engaged in conduct that caused her other three children to test positive for methamphetamines. Ultimately, because of Mother's repeated community corrections violations, the criminal court revoked that sentence and sentenced Mother to ten years in prison. The trial court found that, based on Mother's conviction for attempted aggravated child neglect, her other three children were victims of severe child abuse, as defined by Tenn. Code Ann. § 37-1-102. We agree. Tennessee Code Annotated section 37-1-102(b)(27)(C) defines "severe child abuse" to include "[t]he commission of an act toward the child prohibited by . . . § 39-15-402, . . . or the knowing failure to protect the child from the commission of such an act toward the child." *See also In re Kayden A.*, No. W2020-00650-COA-R3-PT, 2021 WL 408860, at *11 (Tenn. Ct. App. Feb. 5, 2021) (upholding termination under Tenn. Code Ann. § 36-1-113(g)(5) based on guilty plea for attempted aggravated child abuse); *In re Adrian M.-M.*, No. W2019-00931-COA-R3-PT,

---

[7] Under Tenn. Code Ann. § 39-15-402(a)(1), "[a] person commits the offense of aggravated child abuse, aggravated child neglect or aggravated child endangerment, who commits child abuse, as defined in § 39-15-401(a); child neglect, as defined in § 39-15-401(b); or child endangerment, as defined in § 39-15-401(c) and . . . [t]he act of abuse, neglect or endangerment results in serious bodily injury to the child."

2019 WL 5595846, at *11 (Tenn. Ct. App. Oct. 30, 2019) (concluding that "attempted aggravated child abuse at Tenn. Code Ann. § 39-15-402, falls within the definition of severe child abuse at Tenn. Code Ann. § 37-1-102"). Therefore, Mother was sentenced to more than two years' imprisonment for conduct against a child that constituted severe child abuse. We affirm the trial court's determination that Petitioners proved this ground for termination by clear and convincing evidence.

### D. Incarcerated under a sentence of ten or more years

Relying on Mother's incarceration under a ten-year sentence, the trial court determined that grounds for termination existed pursuant to Tenn. Code Ann. § 36-1-113(g)(6). This statute allows for termination of parental rights if:

> The parent has been confined in a correctional or detention facility of any type, by order of the court as a result of a criminal act, under a sentence of ten (10) or more years, and the child is under eight (8) years of age at the time the sentence is entered by the court[.]

Tenn. Code Ann. § 36-1-113(g)(6). Establishing this termination ground is "not a very difficult task." *In re T.M.G.*, 283 S.W.3d 318, 325 n.4 (Tenn. Ct. App. 2008). All that a petitioner must prove is that the parent is serving a prison sentence of at least ten years and that the child was under eight years old when the sentence was imposed. *In re E.M.P.*, No. E2006-00446-COA-R3-PT, 2006 WL 2191250, at *6 (Tenn. Ct. App. Aug. 3, 2006) (citing Tenn. Code Ann. § 36-1-113(g)(6)).

Both elements are present in this case. Given that the child was born in 2017, she unquestionably was under eight years of age in November 2018 when Mother's community corrections sentence was revoked and Mother was ordered to serve ten years in prison. Mother does not challenge the child's age or that she was sentenced to ten years' imprisonment. Instead, she claims that this termination ground does not apply to her because she was ordered to serve only thirty percent of the ten-year sentence with almost 300 days of credit, "thereby almost assuring her release in October 2021." We find this argument unavailing. This Court has "repeatedly recognized that a court considering a petition for termination of parental rights based on Tenn. Code Ann. § 36-1-113(g)(6) need not look beyond the judgment of conviction and the sentence imposed by the criminal court in order to determine whether this ground for termination applies." *In re Audrey S.*, 182 S.W.3d at 876. "While the statute requires some period of confinement, the legislature did not expressly provide that the actual period of confinement must amount to 10 or more years." *In re Chandler M.*, No. M2013-02455-COA-R3-PT, 2014 WL 3586499, at *7 (Tenn. Ct. App. July 21, 2014). Thus, it does not matter if Mother served less than ten years in prison. Based on the foregoing, we affirm the trial court's determination that Petitioners established this termination ground by clear and convincing evidence.

E.  Failure to manifest an ability and willingness to assume custody or financial responsibility

Finally, the trial court terminated Mother's parental rights pursuant to Tenn. Code Ann. § 36-1-113(g)(14).  This ground requires a party to prove two elements by clear and convincing evidence.  *See* Tenn. Code Ann. § 36-1-113(c)(1), (g)(14).  First, a party must prove that the parent failed to manifest "an ability and willingness to personally assume legal and physical custody or financial responsibility of the child[ren]."  Tenn. Code Ann. § 36-1-113(g)(14).  Second, a party must prove that placing the children in the parent's "legal and physical custody would pose a risk of substantial harm to the physical or psychological welfare of the child[ren]."  Tenn. Code Ann. § 36-1-113(g)(14).

To establish the first prong, the party seeking to terminate parental rights need only prove that a parent failed to manifest either an ability or a willingness to assume custody.  *In re Neveah M.*, 614 S.W.3d 659, 677 (Tenn. 2020) (citing *In re Amynn K.*, No. E2017-01866-COA-R3-PT, 2018 WL 3058280, at *13-14 (Tenn. Ct. App. June 20, 2018)).  "Ability focuses on the parent's lifestyle and circumstances[,]" and willingness focuses on the parent's attempts "to overcome the obstacles that prevent [him or her] from assuming custody or financial responsibility for the child."  *In re Serenity W.*, No. E2018-00460-COA-R3-PT, 2019 WL 511387, at *6 (Tenn. Ct. App. Feb. 8, 2019).  Thus, a parent's mere desire to reunite with his or her child is insufficient to demonstrate an ability or a willingness.  *In re Nicholas C.*, No. E2019-00165-COA-R3-PT, 2019 WL 3074070, at *17 (Tenn. Ct. App. July 15, 2019). A petitioner must prove that the parent failed to demonstrate ability and/or willingness as of the date the termination petition was filed.  *In re M.E.N.J.*, No. E2017-01074-COA-R3-PT, 2017 WL 6603658, at *7 (Tenn. Ct. App. Dec. 27, 2017).

Following the child's removal from her custody, Mother initially visited with her for a couple of hours each week, but Mother had no meaningful visitation with the child after July 2018.  Although Mother claimed to earn $1,000 per month while in prison, she failed to pay child support.  Mother testified that she "should be released [from prison] in October [2021]" and that she then planned to transition to a half-way house for six to nine months.  Mother acknowledged that she would not be able to provide a home for the child during that time period.  Indeed, she stated that she intended for the child to continue living with Petitioners and for Petitioners to continue providing for all of the child's needs.  Mother merely wished to "remain involved" in the child's life.  In light of these facts, we agree with the trial court's finding that Mother failed to manifest either an ability or a willingness to assume custody or financial responsibility of the child.

As for the second prong, a thorough review of the trial court's termination order shows that the court failed to make any factual findings regarding a substantial risk of harm to the child if placed in Mother's custody.  Tennessee Code Annotated section 36-1-113(k) requires a trial court to "enter an order that makes specific findings of fact and conclusions

- 10 -

of law" in all termination of parental rights cases. If a trial court fails to comply with this requirement, we often must vacate and remand the case for preparation of the necessary findings of fact and conclusions of law. *State v. McBee*, No. M2003-01326-COA-R3-PT, 2004 WL 239759, at *6 (Tenn. Ct. App. Feb. 9, 2004). Given the lack of sufficient findings, we vacate the trial court's termination of Mother's parental rights pursuant to this termination ground, but because we have determined that other grounds exist to support the trial court's termination of Mother's parental rights, we conclude that it is not necessary to remand this case for additional findings. *See In re Ralph M.*, No. E2021-01460-COA-R3-PT, 2022 WL 3971633, at *16-17 (Tenn. Ct. App. Sept. 1, 2022) (vacating the persistence of conditions ground due to insufficient findings of fact but declining to remand for additional findings because "other grounds exist[ed]").

## II. Best interest

Having determined that clear and convincing evidence of at least one statutory ground exists to terminate Mother's parental rights, we must next consider whether the trial court properly determined that termination of Mother's parental rights was in the best interest of the child. *See* Tenn. Code Ann. § 36-1-113(c)(2); *In re Audrey S.*, 182 S.W.3d at 860. After a court finds that clear and convincing evidence exists to support a ground for termination, the child's interests diverge from those of the parent and the court focuses on the child's best interests. *In re Audrey S.*, 182 S.W.3d at 877. A court must view the child's best interest from the perspective of the child, not that of the parent. *Id.* at 878. A finding that at least one ground for termination of parental rights exists does not necessarily require that a parent's rights be terminated. *Id.* at 877. Because some parental misconduct is redeemable, our termination of parental rights statutes recognize that "terminating an unfit parent's parental rights is not always in the child's best interests." *Id.* The facts a court considers in its best interest analysis must be proven by "a preponderance of the evidence, not by clear and convincing evidence." *In re Kaliyah S.*, 455 S.W.3d 533, 555 (Tenn. Ct. App. Tenn. 2015). Once a court makes the underlying factual findings, it should "consider the combined weight of those facts to determine whether they amount to clear and convincing evidence that termination is in the child's best interest." *Id.*

When considering whether terminating a parent's rights to a child is in the child's best interest, a trial court must consider the factors enumerated in Tenn. Code Ann. § 36-1-113(i).[8] A trial court is not required to find that each of the enumerated factors exists before concluding that it is in the best interest of the child to terminate a parent's rights. *In re M.A.R.*, 183 S.W.3d 652, 667 (Tenn. Ct. App. 2005). Although in some circumstances "the consideration of one factor may very well dictate the outcome of the analysis," *In re*

---

[8] The Tennessee General Assembly amended the statutory best-interest factors in 2021. *See* 2021 TENN. PUB. ACTS ch. 190 § 1 (S.B. 205), eff. April 22, 2021. However, the factors applicable to this appeal are the nine factors identified in Tenn. Code Ann. § 36-1-113(i) (2020), which were in effect when the termination petition was filed on May 11, 2020. *See In re Braxton M.*, 531 S.W.3d at 732.

*Audrey S.*, 182 S.W.3d at 878, a court is still obligated to consider "all the factors and all the proof." *In re Gabriella D.*, 531 S.W.3d 662, 682 (Tenn. 2017).

After considering all of the best interest factors, the trial court found that the factors favored terminating Mother's parental rights. *See* Tenn. Code Ann. § 36-1-113(i). The evidence in the record before us does not preponderate against the trial court's findings of fact.

The first best interest factor considers whether a parent "has made such an adjustment of circumstance, conduct, or conditions as to make it safe and in the child's best interest to be in the home of the parent." Tenn. Code Ann. § 36-1-113(i)(1). After the child was removed from her custody, Mother continued using drugs and violating community corrections for approximately a year. She claimed that she had remained sober since 2018, but her sobriety was unquestionably assisted by the fact she had been incarcerated since 2018. Mother testified that she took advantage of several classes offered by her prison "to help her be a better mother." We commend her for these efforts, but her efforts while not incarcerated were very minimal. Mother believed she would be paroled in October 2021 and planned to transition into a half-way house for a period of six to nine months after release. Given Mother's situation, such a transition would be reasonable. During this transition period, however, Mother would not be able to provide a home for the child. We must conclude that the child has waited long enough for Mother to be a parent to her. This factor favors termination.

The trial court determined that factor two—"[w]hether the parent . . . has failed to effect a lasting adjustment after reasonable efforts by available social services agencies for such duration of time that lasting adjustment does not reasonably appear possible"—did not apply in this case. *Id.* § 36-1-113(i)(2). Finding no evidence in the record that a social services agency provided assistance to Mother, we agree that this factor does not apply.

Next, the trial court found that a meaningful relationship did not exist between Mother and the child because she did not maintain regular visitation. *See id.* § 36-1-113(i)(3)-(4) ("Whether the parent . . . has maintained regular visitation" and "[w]hether a meaningful relationship has otherwise been established between the parent . . . and the child."). The Department removed the child from Mother's custody when she was approximately two months old and, at the time of trial, the child was four years old. Mother visited the child only once after she began living with Petitioners in the summer of 2018. Admittedly, Mother was incarcerated not long after the child began living with Petitioners, but the record shows that Mother made little to no effort to visit with the child in the months before her incarceration. Mother testified that she did not visit because she was unable to contact Petitioners. The trial court found Mother's testimony on this issue not credible. The record supports this finding. Mother stated that she was in constant contact with Father, and Father testified that he had Petitioners' contact information at all relevant times. Furthermore, Mr. L. stated that Mother had his and his wife's phone numbers and that the

phone numbers never changed. Petitioners did move once during the custodial episode, but we agree with the trial court's finding that DCS would have had Petitioners' new contact information and could have provided it to Mother had she asked for it. Based on these facts, we agree with the trial court's finding that Mother did not establish a meaningful relationship with the child due to her failure to maintain regular visitation. These factors favor termination.

The fifth best interest factor considers "[t]he effect of a change of caretakers and physical environment is likely to have on the child's emotional, psychological and medical condition." *Id.* § 36-1-113(i)(5). The child is happy and doing well in Petitioners' home. Petitioners have ensured that the child maintains contact with her siblings. In fact, Mr. L. testified that he and his wife moved to Clarksville so the child would be closer to her siblings. Mother, on the other hand, continued using drugs and violating her community corrections sentence which culminated in her incarceration and, as of trial, she remained incarcerated. This factor favors termination.

The sixth best interest factor considers "[w]hether the parent, or guardian, or other person residing with the parent or guardian, has shown brutality, physical, sexual, emotional or psychological abuse, or neglect toward the child, or another child or adult in the family or household." *Id.* § 36-1-113(i)(6). As discussed in detail above, the trial court found that three of Mother's other children were victims of severe child abuse perpetrated by Mother because she was convicted of two counts of attempted aggravated child neglect after those children tested positive for methamphetamines. Kamyiah also tested positive for THC and methamphetamines while in Mother's custody. This factor favors termination.

Factor seven considers whether there is criminal activity in the home and whether a parent is often unable to care for a child due to substance abuse. *Id.* § 36-1-113(i)(7). Following the child's removal, Mother continued using drugs and repeatedly violated community corrections. As a result, the criminal court revoked her community corrections sentence and sentenced her to ten years' imprisonment. Although Mother believed she would be released from prison in October 2021, as of trial, she remained incarcerated. Mother planned to transition into a half-way home for six to nine months upon being released from prison, but she admitted that she would not be able to provide a safe and healthy home for the child during that time period. This factor favors termination.

Factor eight focuses on a parent's mental or emotional status. *See id.* § 36-1-113(i)(8). The record contains no evidence pertaining to this factor and it, therefore, does not apply.

Lastly, factor nine considers whether a parent has paid child support. *Id.* § 36-1-113(i)(9). On August 24, 2018, the juvenile court entered an order requiring Mother to pay $100 per month in child support. Mother testified that she had a job while in prison and

earned approximately $1,000 per month. Nonetheless, Mother failed to pay the ordered child support. This factor favors termination.

Based on the foregoing, we conclude that the combined weight of the proven facts amounts to clear and convincing evidence that termination of Mother's parental rights is in the best interest of the child.

CONCLUSION

We affirm the trial court's determination that clear and convincing evidence exists to establish the grounds of abandonment by wanton disregard, persistence of conditions, sentenced to two or more years' imprisonment due to conduct against a child, and incarcerated under a sentence of ten or more years while the child is under the age of eight. Because the trial court failed to make sufficient findings of fact regarding the failure to demonstrate an ability and willingness to assume custody or financial responsibility termination ground, we vacate the court's determination that Mother's parental rights should be terminated pursuant to that ground. We affirm the trial court's conclusion that termination of Mother's parental rights is in the best interest of the child. Costs of this appeal are assessed against the appellant, Brittany H., for which execution may issue if necessary.


_/s/ *Andy D. Bennett*_____
ANDY D. BENNETT, JUDGE